IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VICKI KORINKO,<br><br>        *Plaintiff,*<br><br>v.<br><br>COME READY NUTRITION, LLC *doing business as* READY NUTRITION and PATRICK CAVANAUGH, *an individual*,<br><br>        *Defendants.* | Civil Action No. 2:20-cv-226<br><br>Hon. William S. Stickman IV |

**MEMORANDUM OPINION AND ORDER OF COURT**

WILLIAM S. STICKMAN IV, District Judge

Plaintiff Vicki Korinko ("Korinko") filed a Complaint alleging twelve causes of action. (ECF No. 1). Each cause of action arises out of an incident between Korinko and Defendant Patrick Cavanaugh ("Cavanaugh") while Korinko was employed at Come Ready Nutrition, LLC ("Ready Nutrition"). Korinko alleges that she was inappropriately touched by Cavanaugh, who was acting in the course of his employment, and thus, she brings claims of (1) sexual harassment and discrimination under federal law; (2) sexual harassment and discrimination under Pennsylvania state law; (3) wrongful supervision and retention; (4) negligent supervision and retention; (5) intentional infliction of emotional distress; (6) negligent infliction of emotional distress; (7) false imprisonment; (8) assault; (9) battery; (10) fraudulent misrepresentation; (11) negligent misrepresentation; and (12) breach of contract. Defendants filed a Motion to Dismiss, arguing that Korinko failed to state a claim as to each of the twelve counts under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 5).

1

The Court holds that Korinko has failed to state a claim with regard to five of the twelve causes of action—wrongful supervision, negligent supervision, fraudulent misrepresentation, negligent misrepresentation, and breach of contract. The Court will allow the remaining seven causes of action to proceed to discovery. Thus, for the reasons detailed below, Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

## FACTUAL BACKGROUND

On May 28, 2018, Korinko was hired as an administrative assistant by Defendant Ready Nutrition, LLC d/b/a Ready Nutrition and Defendant Patrick Cavanaugh. Cavanaugh owns and is the Chief Executive Officer of Ready Nutrition. After she was hired, Korinko signed a document titled "Come Ready Nutrition Code of Conduct." (ECF No. 1, ¶¶ 15-16, 105; ECF No. 9, Ex. 1).

On June 5, 2018, Ready Nutrition held an employee meeting in which Korinko was asked questions regarding her protected personal health and fitness information, and she objected to the collection of this information. On January 7, 2019, in another company meeting, Defendants instructed employees to partner up for the purpose of conducting measurements of various body parts.[1] Then, on January 15, 2019, Korinko was summoned into Cavanaugh's office for measuring. While Korinko and Cavanaugh were alone in the office, Korinko was measured around her upper-right-arm and around her mid-thigh. Korinko further alleges that she strenuously objected to the measurements on separate occasions, namely, the meeting on January 7, 2019, and the encounter in Cavanaugh's office on January 15, 2019. (ECF No. 1, ¶¶ 18-19, 21-23, 25-28).

---

[1] Defendants dispute this fact; however, for purposes of the Motion to Dismiss, this fact is accepted as true by the Court.

On February 2, 2019, Korinko received a text message from Cavanaugh about further measurements that were to take place two days later, on February 4, 2019. Thereafter, Korinko terminated her employment, claiming constructive discharge. (ECF No. 1, ¶¶ 29-30).

After the termination of her employment, Korinko timely filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging violations of Title VII of the Civil Rights Act of 1964, including but not limited to violations of sex discrimination and allegations of sexual harassment, and she received a Notice of Right to Sue on November 18, 2019. (ECF No. 1, ¶¶ 13-14). On February 12, 2020, she filed the instant Complaint alleging sex discrimination and sexual harassment giving rise to a hostile work environment and multiple common law claims. (ECF No. 1). Defendants filed a Motion to Dismiss on April 20, 2020, arguing that Korinko failed to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 5).

All parties in this matter are residents of Pennsylvania. The Court has subject matter jurisdiction over the first cause of action under 28 U.S.C. § 1331, and supplemental jurisdiction over all other causes of action under 28 U.S.C. § 1367.

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009); *see also DiCarlo v. St. Marcy Hosp.*, 530 F.3d 255,

262–63 (3d Cir. 2008). Although this Court must accept the allegations in the Complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts give rise to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

Generally, a court may not consider an extraneous document when reviewing a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). If matters outside the pleadings are presented to, and not excluded by, the court, the motion must be converted to a motion for summary judgment. *See* FED. R. CIV. P. 12(d). When reviewing the sufficiency of a complaint, however, a court may consider attachments to it without converting the motion into one for summary judgment as long as they are integral to the allegations in the complaint and are indisputably authentic. *See In re Burlington*, 114 F.3d at 1426 (holding that a court may consider a "document integral to or explicitly relied upon in the complaint." (citations omitted)); *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) (same); *Fallon v. Mercy*

4

*Catholic Med. Ctr. of Se. Penn.*, 877 F.3d 487, 493 (3d Cir. 2017) (same); FED. R. CIV. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *see also Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that a court may consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

## ANALYSIS

As an initial matter, each of Korinko's twelve claims is accompanied by an additional assertion of vicarious liability under the doctrine of *respondeat superior*. Because Cavanaugh was acting in the course of his employment at the time of the allegedly inappropriate and offensive incident(s), all claims of vicarious liability against Ready Nutrition are sufficiently pled in the Complaint. However, as to those causes of action the Court dismisses, "there is no independent cause of action for *respondeat superior* under Pennsylvania law." *Booker v. Nat'l R.R. Passenger Corp.*, 880 F. Supp. 2d 575, 586 (E.D. Pa. 2012) (citation omitted). Thus, where a direct claim is dismissed, the corresponding vicarious liability claim is also dismissed. With this background in mind, the Court will address each of the causes of action asserted by Korinko.

A. **Count I – Sexual Harassment and Sexual Discrimination in Violation of Title XII, and Count II - Sexual Harassment and Sexual Discrimination in Violation of the Pennsylvania Human Relations Act**

In Count I, Korinko alleges sexual harassment and sexual discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* In Count II, Korinko alleges sexual harassment and sexual discrimination in violation of the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 955 *et seq.* The PHRA is interpreted in accord with Title VII. *See Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996); *Gomez v. Allegheny Health Servs., Inc.*,

71 F.3d 1079, 1083-84 (3d Cir. 1995); *Chmill v. City of Pittsburgh*, 412 A.2d 860, 871 (Pa. 1980). Consequently, the motion to dismiss Count I and Count II will be considered together.

Korinko claims that Defendants' actions were discriminatory sexual harassment giving rise to a hostile work environment and were in violation of Title VII and the PHRA. (ECF No. 1, ¶ 36). To show that there was a hostile work environment under Title VII and the PHRA, a plaintiff must establish that "(1) the employee suffered intentional discrimination because of his/her sex, (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person in like circumstances, and (5) the existence of *respondeat superior* liability." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (citation omitted). Sexual harassment, to violate Title VII, must be "severe or pervasive" enough to "alter the conditions of [the victim's] employment and create an abusive working environment . . . ." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (quotations omitted). The work environment must be "objectively and subjectively offensive . . . ." *Id.* "[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Id.* at 788.

Here, Korinko alleges one instance of Cavanaugh measuring her thigh and her upper arm along with text messages several weeks later telling her "measurement day" was approaching. Defendants argue that Cavanaugh's alleged actions, even if accepted as true, do not rise to the "severe" or "pervasive" standard when compared to other Third Circuit decisions. (ECF No. 6, pp. 6-7). *See Burgess v. Dollar Tree Stores, Inc.*, 642 F. App'x 152, 153-55 (3d Cir. 2016) (affirming dismissal of hostile work environment claim in favor of defendant after defendant continually touched plaintiff's hair, made sexual advances, and threated to rip her necklace off); *Clayton v. City of Atlantic City*, 538 Fed App'x 124, 129 (3d Cir. 2013) (affirming summary

judgment in favor of defendant when plaintiff continually grabbed plaintiff's buttocks and made sexually lewd comments); *Grassmyer v. Shred-It USA, Inc.*, 392 F. App'x 18, 25, 30 (3d Cir. 2010) (affirming summary judgment in favor of defendant when plaintiff made sexual inappropriate comments creating a "boys club" culture). Whether or not Cavanaugh's actions are more "severe" or "pervasive" than those actions in the cases above is subject to disagreement and additional fact-finding is warranted to develop the record further in this case. Korinko has plausibly pled claims under Count I and Count II. As a result, Defendants' motion to dismiss Count I and Count II for failure to state a claim is DENIED.

    **B.**    <u>**Korinko's Common Law Claims**</u>

        **1)**    **The Pennsylvania Human Relations Act's Exclusivity Provision**

Before proceeding to the substance of Korinko's common law claims, the Court must address the issue of whether the claims are barred by the exclusivity provision of the PHRA. Defendants assert that all of Korinko's common law claims should be dismissed because the PHRA provides the sole and exclusive remedy for the alleged conduct. The PHRA is, in fact, the exclusive remedy for offenses listed in section five of the statute. 43 Pa. C.S.A. § 962(b) ("the procedure herein provided shall, when invoked, be exclusive and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the complainant concerned"). The fact that an employer discriminated cannot be used as support for a separate tort claim and "must be adjudicated within [the PHRA's] framework." *Keck v. Commercial Union Ins. Co.*, 758 F. Supp. 1034, 1039 (M.D. Pa. 1991). To allow a separate common law remedy for discriminatory acts would be superfluous and would cut against the purpose of the PHRA's exclusivity provision. However, "if all or part of the facts that would give rise to a

7

discrimination claim would also independently support a common law claim, the common law claim is not preempted by the PHRA and need not be adjudicated within its framework." *Id.*

Korinko's claims for intentional infliction of emotional distress (Count V), negligent infliction of emotional distress (Count VI), false imprisonment (Count VII), assault (Count VIII), and battery (Count IX) are not preempted by the PHRA. Rather, the causes of action protect "fundamentally different" interests from those Korinko seeks to protect under her PHRA claim. Further, these offenses are not listed in section five of the PHRA and are thus not covered by the statute's exclusivity provision.

On the other hand, Korinko's wrongful supervision (Count III), negligent supervision (Count IV), fraudulent misrepresentation (Count X), negligent misrepresentation (Count XI), and breach of contract (XII) claims appear to be inextricably intertwined with her discrimination claims and are thus preempted by the PHRA. However, this Court prefers to adjudicate claims on their merits, when possible. As explained below, the Court has carefully examined Counts III, IV, X, XI and XII and determined that they must fail on their own terms—not merely as being preempted. As such, the Court need not undertake a deeper examination of whether these counts are preempted by the PHRA.

> 2) **Count III – Wrongful Supervision and Retention of Defendant Patrick Cavanaugh in Violation of Pennsylvania Common Law**

Count III alleges wrongful supervision and retention of Cavanaugh in violation of Pennsylvania common law. Defendants correctly argue that such a claim does not exist under Pennsylvania law. (ECF No. 6, pp. 7-8). The case law cited by Korinko addresses only negligent supervision and retention. In interpreting Pennsylvania law, the Eastern District of Pennsylvania has explicitly stated that "there is no cause of action for 'wrongful supervision'

8

under Pennsylvania law." *Booker v. Nat'l R.R. Passenger Corp.*, 880 F. Supp. 2d 575, 586 (E.D. Pa. 2012) (citation omitted).

Korinko also states that "[u]nder the doctrine of *respondeat superior* recovery is sought on the basis of vicarious liability." (ECF No. 9, ¶ 40). However, "there is no independent cause of action for *respondeat superior* under Pennsylvania law." *Booker,* 880 F. Supp. 2d at 586. "*Respondeat superior* is 'a means of imputing liability to an employer for the actions of its agents, servants, or employees' [. . .] This is not an independent action under Pennsylvania law [. . .] ." *Ford Motor Credit Co. LLC v. Maxwell*, 2012 U.S. Dist. LEXIS 67271, at *2 (M.D. Pa. 2012) (quoting *Care v. Reading Hosp. & Med Ctr., Inv.*, 2004 U.S. Dist. LEXIS 5485, at *12 (E.D. Pa. 2004)).

Because there is no cause of action under Pennsylvania law for wrongful supervision and retention, Defendants' motion to dismiss Count III for failure to state a claim is GRANTED.

### 3) Count IV – Negligent Supervision and Retention of Defendant Patrick Cavanaugh in Violation of Pennsylvania Common Law

Korinko asserts that Ready Nutrition is liable for the negligent supervision and retention of Cavanaugh. To recover for negligent supervision, a plaintiff must prove that her loss resulted from "(1) a failure to exercise ordinary care to prevent an intentional harm by an employee acting outside the scope of his employment, (2) that is committed on the employer's premises, (3) when the employer knows or has reason to know of the necessity and ability to control the employee." *Belmont v. MB Investment Partners, Inc.*, 708 F.3d 470, 488 (3d. Cir. 2013) (citations omitted). To prevail on a claim for negligent supervision, it must be demonstrated that the employer knew or should have known of the need to control the employee. *Id.* at 491. "An employer knows, or should know, of the need to control an employee if the employer knows that the employee has dangerous propensities that might cause harm to a third party." *Id.*

9

Korinko has failed to plead a claim for negligent supervision because she has failed to set forth any allegations regarding the supervision, if any, to which Cavanaugh was subjected. Korinko assets that she "reported the conduct of Defendant Come Ready Nutrition, LLC d/b/a Ready Nutrition's management, Defendant Patrick Cavanaugh." But this allegation is inconsistent with other allegations of the Complaint. Specifically, she pleads that "Defendant Patrick Cavanaugh is, and at all times relevant to this complaint upon information and belief, the owner, Chief Executive Officer and employee of Defendant Come Ready Nutrition, LLC d/b/a Ready Nutrition." (ECF No. 1, ¶ 5). Korinko makes no allegations about any other management or any other person who had supervisory authority over Cavanaugh. She does not specifically allege to whom she reported Cavanaugh's actions. She does not allege that any purported supervisor knew or had reason to know of a need to control Cavanaugh's actions.

Even under the notice pleading regimen of the Federal Rules of Civil Procedure, a plaintiff cannot prevail on bald allegations, much less theories that find no support in (or are contradicted by) the factual allegations of the Complaint, when read as a whole. Korinko has failed to plausibly plead that a claim of negligent supervision and retention. Therefore, Defendants' motion to dismiss Count IV for failure to state a claim is GRANTED.

4) **Count V – Intentional Infliction of Emotional Distress in Violation of Pennsylvania Common Law**

To recover for intentional infliction of emotional distress, a plaintiff must show that defendant's conduct was (1) extreme and outrageous; (2) intentional or reckless; and (3) causes severe emotional distress. *Williams v. Guzzardi*, 875 F.2d 46, 52 (3d Cir. 1989). Defendants argue that, even if taken as true, their conduct does not rise to the level of "extreme and outrageous." The standard for "extreme and outrageous" conduct is very high under Pennsylvania law. *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988). "Indeed, the

only instances in which courts applying Pennsylvania law have found conduct outrageous in the employment context is where an employer engaged in both sexual harassment and other retaliatory behavior against an employee." *Id.*

Though there is no allegation of retaliatory behavior, "*where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability.*" Restatement (Second) of Torts § 46 comment h (emphasis added). The Court finds that a jury could reasonably conclude that Cavanaugh's alleged actions rise to the level of "extreme and outrageous."

Korinko must also show that Defendants' actions caused severe emotional distress. While the severity of Korinko's emotional distress is not fully known at this stage, facts have been pled to plausibly assert that Defendants' alleged actions could have led to severe emotional distress. Korinko will be able to take discovery to determine whether there is evidence that Defendants' conduct was "extreme and outrageous" and if she suffered severe emotional distress as a result of that conduct. Defendants' motion to dismiss Count V for failure to state a claim is DENIED.

### 5) Count VI – Negligent Infliction of Emotional Distress in Violation of Pennsylvania Common Law

Though both sides focus on bystander liability, negligent infliction of emotional distress can apply to a plaintiff who can show one of the following four elements: "(1) that the Defendant had a contractual or fiduciary duty toward her; (2) that Plaintiff suffered a physical impact; (3) that Plaintiff was in a "zone of danger" and at risk of an immediate physical injury; or (4) that Plaintiff had a contemporaneous perception of tortious injury to a close relative." *Doe v. Philadelphia Community Health Alternatives Aids Task Force*, 745 A.2d 25, 27 (Pa. Super.

11

1999) (citations omitted). Despite citing case law that focuses on bystander liability, Korinko claims that the emotional distress was caused by the alleged unwanted touching and implies that a duty was owed based on the employment contract's code of conduct. (ECF No. 9, ¶¶ 64-65). Emotional distress caused by unwanted touching could plausibly fall under (2) the "impact rule." *See Toney v. Chester County Hosp.*, 36 A.3d 83 (Mem), 614 Pa. 98, 88-100 (Pa. 2011) (establishing that a negligent actor can still be liable if the harm results solely from the shock or fright).

Defendants owe a reasonable duty of care to all employees who are acting in the course of their employment. While a standard employment duty does not normally rise to the level of care for a claim of negligent infliction of emotional distress, Korinko will nevertheless be given discovery to develop a factual record as to whether some heightened duty was owed. Defendant's motion to dismiss Count VI for failure to state a claim is DENIED.

### 6)  Count VII – False Imprisonment in Violation of Pennsylvania Common Law

A false imprisonment claim under Pennsylvania law requires three elements: "(1) acts intending to confine another within boundaries fixed by another which (2) directly or indirectly result in such confinement (3) of which plaintiff is conscious or by which the plaintiff is harmed." *Chicarelli v. Plymouth Garden Apartments*, 551 F. Supp 532, 540 (E.D. Pa. 1982) (citations omitted). Additionally, the confinement must be complete; if there is a known, safe means of escape, involving only a slight inconvenience, there is no false imprisonment. *Id*. at 541.

Korinko's Complaint alleges that she was "trapped in the isolated office of Defendant Patrick Cavanaugh" and that over her "strenuous objection" she was approached and touched inappropriately by him. (ECF No. 1, ¶ 24). Defendants argue that Korinko has failed to allege

12

that the confinement was complete: "Plaintiff fails to allege that there was any verbal threat, physical force, or physical barriers to the alleged confinement," and it continues, "[p]laintiff fails to allege that she asked Cavanaugh to leave or that Cavanaugh prevented her from leaving." (ECF No. 5, ¶¶ 60-61). Furthermore, they argue that her common law tort claim is barred by the PHRA's exclusivity provision. (ECF No. 5, ¶ 63).

Korinko's claim for false imprisonment protects a "fundamentally different" interest from that which she seeks to protect under her PHRA claim. *Keck*, 758 F. Supp. at 1039. Further, this offense is not listed in section five of the PHRA and is thus not covered by the statute's exclusivity provision. The Court acknowledges the undisputed fact that Korinko was in Cavanaugh's office where she was subjected to allegedly offensive touching. It is unclear from the Complaint if her confinement in the office was complete or what means of escape, if any, were available to her. Korinko's claim meets the plausibility standard for the assessment of motions to dismiss. Defendants' motion to dismiss Count VII for failure to state a claim is DENIED.

    7)    **Count VIII – Assault in Violation of Pennsylvania Common Law**

Under Pennsylvania common law, the intentional tort of assault is an act intended to put another person in reasonable apprehension of an immediate harmful or offensive contact, which succeeds in causing an apprehension of such a contact. *See Cucinotti v. Ortmann*, 159 A.2d 216, 217-18 (Pa. 1960). Korinko alleges that the threat of her body being measured as well as the measurements themselves placed her in imminent fear of a harmful or offensive contact. (ECF No. 1, ¶¶ 91-92). She submits that these acts were intentionally carried out by Cavanaugh who knew to a substantial certainty that she would find them offensive. Korinko has pled more than

enough to survive a motion to dismiss. Defendants' motion to dismiss Count VIII for failure to state a claim is DENIED.

### 8) Count IX – Battery in Violation of Pennsylvania Common Law

The intentional tort of battery under Pennsylvania common law is an unconsented harmful or offensive contact with the person of another. *Cooper v. Lankenau Hosp.*, 51 A.3d 183, 191 (Pa. 2012) (citation omitted). It consists of a voluntary and intentional act that is a harmful or offensive physical contact with another without the person's consent. "'A bodily contact is offensive if it offends a reasonable sense of personal dignity.'" *Herr v. Booten*, 580 A.2d 1115, 1117 (Pa. Super. 1990) (quoting Restatement (Second) of Torts § 19) (emphasis omitted). "Implicit in the tort of battery is the recognition that an individual has a right to be free from unwanted and offensive or harmful intrusions upon his own body." *Id.*

Korinko alleges that, while at work, Cavanaugh placed his hands on her right-upper-arm and between her legs on her mid-thigh. (ECF No. 1, ¶¶ 27-28). According to Korinko, this contact was offensive, she did not consent to it, and she objected multiple times. (ECF No. 1, ¶ 28). As with her assault claim, Korinko has sufficiently asserted a plausible claim for battery. Defendants' motion to dismiss Count IX for failure to state a claim is DENIED.

### 9) Count X – Fraudulent Misrepresentation in Violation of Pennsylvania Common Law

A plaintiff may recover for fraudulent misrepresentation under Pennsylvania law if there is: (1) a representation, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false, (4) with the intent of misleading another into relying on it, (5) justifiable reliance on the misrepresentation, and (6) the resulting injury was proximately caused by the reliance. *Bortz v. Noon*, 729 A.2d 555, 560 (Pa. 1999). Korinko alleges that Defendants "made [false] representations as to a commitment to the

law, protecting employees from sexual harassment and progressive values" and that she relied upon these statements to her detriment. (ECF No. 1, ¶ 105).

Federal Rule of Civil Procedure 9(b) states that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). It continues, regarding a defendant's state of mind, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* The Court finds that Korinko has failed to adequately plead a claim for fraudulent misrepresentation.

As an initial point, Defendants raise an important issue regarding Count X as well as Counts XI and XII (negligent misrepresentation and breach of contract, respectively). Namely, there are discrepancies between that which is raised in Korinko's Complaint and that which is contained in her Response to the Motion to Dismiss. Violating FED. R. CIV. P. 9, Korinko's Complaint fails to allege with specificity the circumstances surrounding the fraud. The Complaint attaches no contract or other agreement, provides no language of the allegedly false statement(s), and alleges no date, place, or time that the statements were made. *Compare to Bennet v. Itochu Int'l, Inc.*, 682 F. Supp. 2d. 469, 479-80 (E.D. Pa. 2010) (plaintiffs sufficiently pled a claim of fraudulent misrepresentation where they offered specific dates of when the misrepresentations occurred, by whom and to whom they were made, and the circumstances surrounding those statements. In each situation in which they alleged that a fraudulent misrepresentation was made, they alleged an intention by the maker that the recipient was to be induced to act, justifiable reliance, and damage). The Complaint merely suggests that the statements forming the basis of the misrepresentation claim were contained in a document titled "Come Ready Code of Conduct." (ECF No. 1, ¶ 105). Korinko's Complaint also fails to generally allege that Defendants intended to mislead her into relying upon the false statements,

apart from the conclusory assertion that "false statements…were intentionally made, resulting in damages." (ECF No. 1, ¶ 107).

In her Response to Defendants' motion to dismiss, however, Korinko adds new facts that are not included in her Complaint so as to bolster the allegations with more specificity. She attached the "Come Ready Code of Conduct" as an exhibit to her brief; she points to two specific statements of the Code of Conduct that were allegedly fraudulent; and she more specifically pleads Defendants' intent by stating, "Defendant Cavanaugh had no intent to refrain from his relentless pursuit to touch Plaintiff's body." (ECF No. 9, ¶¶ 82-84).

The Court must only consider those facts alleged in Korinko's Complaint. *ALA, Inc.*, 29 F.3d at 859. The Court must determine whether Korinko has stated a claim based on the facts pled, not on new facts brought to light in response to Defendants' motion to dismiss. The Court is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation," particularly pursuant to the Rule 9 standard whereby a plaintiff must plead fraud with a greater degree of specificity than other tort claims. *Baraka v. McGreevey*, 481 F.3d 187, 195 (3rd Cir. 2007) (citations omitted).

A review of the Complaint shows that Korinko cannot support a plausible claim of fraudulent misrepresentation against Cavanaugh and Ready Nutrition, respectively. Not only does the Complaint fail to name any false statement whatsoever, it also fails to allege any malintent. Even were the Court to accept the additional allegations of Korinko's Response, the statement that "Cavanaugh had no intent to refrain from his relentless pursuit to touch Plaintiff's body" does not reflect intent to deceive a person with knowingly false statements. (ECF No. 9, ¶ 84). For these reasons, Defendants' motion to dismiss Count X for failure to state a claim is GRANTED.

### 10)   Count XI – Negligent Misrepresentation in Violation of Pennsylvania Common Law

A plaintiff may recover for negligent misrepresentation under Pennsylvania law if there is: (1) a misrepresentation of a material fact, (2) made under circumstances in which the misrepresenter ought to have known its falsity, (3) with an intent to induce another to act on it, and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation. *Bortz*, 729 A.2d at 561.  Korinko's allegations with regard to Count XI are no different than the allegations of Count X.  Korinko alleges that in a document titled "Come Ready Code of Conduct," Defendants "made representations as to commitment to the law, protecting employees from sexual harassment and progressive values," and that she relied upon these false representations to her detriment.  (ECF No. 1, ¶ 112).

Unlike a claim for fraudulent misrepresentation, negligent misrepresentation is not subject to the standard of pleading in Rule 9(b); however, Pennsylvania common law holds that negligent misrepresentation claims must still be pled with some degree of specificity.  *See Brandow Chrysler Jeep Co. v. DataScan Techs.*, 511 F. Supp. 2d 529, 537 (E.D. Pa. 2007) (citing omitted).  Korinko's allegation that Defendants "made representations as to a commitment to the law, protecting employees from sexual harassment and progressive values" is conclusory.  Apart from the title of the Code of Conduct that she signed prior to her employment; Korinko's Complaint fails to put forth any specific fact that supports an allegation of negligent misrepresentation.  The Complaint fails to specifically allege any statement whatsoever that was made by Defendants, that is false, and that she detrimentally relied on.

For these reasons, Defendants' motion to dismiss Count XI of negligent misrepresentation is GRANTED.

      **11)    Count XII – Breach of Contract Under Pennsylvania Common Law**

A plaintiff may recover for breach of contract under Pennsylvania law if there is: (1) the existence of a contract, including its essential terms, (2) a breach of the contract, and (3) resultant damages. *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3rd Cir. 2003) (citation omitted). In support of Count XII, Korinko alleges that "by holding employee meetings and promoting to its employees an atmosphere free of sexual harassment and otherwise compliant with the law," Defendants induced her to work and to continue to work for the company, which "resulted in a contract." (ECF No. 1, ¶ 118).

Defendants note that Count XII is subject to the same critique as Counts X and XI. Namely, there are discrepancies between that which is contained in Korinko's Complaint and that which is contained in her Response to their motion to dismiss. The Court agrees. Not only does the Complaint fail to attach the alleged contract or lay out its essential terms, but it is wholly unclear as to what type of contract or agreement is in question—i.e. an employment contract, the "Come Ready Code of Conduct", or some other contract entirely. Following Defendants' argument that "Plaintiff failed to plead any facts to suggest the existence of a contract," however, Korinko attached the Code of Conduct to her Response and further alleged it to be the contract in question, which should be treated as an employment contract. (ECF No. 5, ¶ 109; ECF No. 9, ¶ 97).

The Court assesses Korinko's claim on the face of the Complaint. Count XII fails to state a claim. Moreover, were the Court the accept the Code of Conduct contained in her Response, the result would remain the same. Not only does the Code of Conduct fail to adequately state the terms of Korinko's employment—the document merely requires employees to abide by certain standards of behavior—but also, the Code of Conduct is only binding on Korinko, not Ready

Nutrition. There is no provision of the agreement that Ready Nutrition could have breached. For these reasons, Defendants' motion to dismiss Count XII for failure to state a claim is **GRANTED**.

## CONCLUSION

AND NOW, this **21** day of August 2020, IT IS HEREBY **ORDERED** that Patrick Cavanaugh's and Come Ready Nutrition, LLC's Motion to Dismiss (ECF No. 5) is **GRANTED IN PART AND DENIED IN PART**. The Motion is **GRANTED** as to Count III, Count X, Count XI, and Count XII, and these claims are hereby dismissed. The Motion is **DENIED** as to Count I, Count II, Count IV, Count V, Count VI, Count VII, Count VIII, and Count IX. These claims may proceed.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE